**Henry Martin SMITH and Dirk Vincent Terry, Appellants,**

v.

**STATE of Texas, Appellee.**

**Nos. B14–82–392–CR, A14–82–397–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

Nov. 17, 1983.

Rehearing Denied Dec. 22, 1983.

Discretionary Review Granted
June 27, 1984.

72

Terry Collins, Larry Urquhart, Houston, for appellants.

Calvin Hartmann, Asst. Dist. Atty., Houston, for appellee.

Before PAUL PRESSLER, ROBERT-SON and CANNON, JJ.

## OPINION

ROBERTSON, Justice.

Although indicted separately, appellants were jointly tried for the offenses of securing execution of a document by deception as proscribed by the TEX.PENAL CODE ANN. § 32.46 (Vernon 1974). The jury rejected their pleas of not guilty, found each guilty on four counts alleged in their respective indictments and assessed punishment for each at confinement for a period of five years and a fine of $2,500 on each count. The appeals have been consolidated. Appellants raise twelve identical grounds of error concerning sufficiency of evidence, jury argument, charge to the jury, admissibility of evidence, sufficiency of the indictments, and a motion to suppress evidence. Appellant Terry raises four additional grounds of error attacking the sufficiency of the evidence to establish, under each count of the indictment, his criminal responsibility for the offenses. We affirm.

There being an attack upon the sufficiency of the evidence it will be set out in some detail. As background information, the evidence shows and the jury was entitled to believe, that appellant Terry owned a business called "National Home Improvement Program." An advertisement for such business appeared in the T.V. Guide of the Houston Chronicle for some period of time. The ad, measuring some 4 × 5 inches and complete with a picture of Uncle Sam, the American flag and stars, carried in bold print the words "APPROVED HOME IMPROVEMENT LOANS", "NO ONE REJECTED," and in bolder print "BAD CREDIT NO CREDIT." Further the ad stated "NO DOWN PAYMENT," "NO REJECTS HERE," "WE HAVE AN APPROVED LOW INTEREST IMPROVEMENT LOAN FOR YOU," "EVEN IF YOU DON'T HAVE A JOB." (Emphasis in ad). Improvements carried in the ad were siding, insulation, trim, overhang, roofing, air conditioning, carpet, aluminum replacement windows, "etc." Finally, the ad represented the National Home Improvement Program operated in "Texas, Louisiana, Georgia, Florida Districts." No address was given for the company and the only telephone number given was that of a telephone answering service. Over a period of several months numerous people (some fifty-five to sixty customers according to the representation of appellant Terry in a recording) answered the ad. In the beginning appellant Terry called personally upon some of the people answering the ad, but subsequently appellant Smith was hired and trained by Terry as the salesman to call upon the prospective customers. Appellant Smith did not use his own name when soliciting contracts, but instead used the name "Don Emmons," "Dirk Terry," "Don Edmonds" or "Don Hammonds." The jury was authorized to believe that the only customers of National Home Improvement Program were those who either answered the T.V. Guide advertisement or another person referred by such customer. The jury was further authorized to find that telephone calls to the answering service made subsequent to some of the work contracted to be done had been completed were generally not returned.

In addition to the testimony of the four complainants named in the indictments, the

state additionally called twelve other persons who testified concerning the details of other similar transactions. In each transaction the facts are almost identical; a general statement of the method of operation will suffice. A financially disadvantaged person who desired some specific work on his home would answer the ad. Of the sixteen complainants, seven identified Terry as the person who came to their home to discuss the improvements. On one of these transactions Smith accompanied Terry. The other nine identified Terry (who identified himself to them as either Edmonds, Terry, Emmons or Hammonds), as the person who called upon them. Representations were made by either Terry or Smith in nine of the transactions that their program was connected with "the government." Without exception the sales pitch was identical. The complainant would tell the salesman the work desired; the salesman would represent that work could be done but "to qualify" it was necessary to have "additional work" done. The "additional work" to be done was usually a roof, central air conditioning or siding. It was explained to the customer that it was a "package deal" for a certain price for all of the repairs but some of the repairs (usually the air conditioning or the roof or the siding) would be written in a "contract" (for the total agreed price for all of the repairs). The majority of the work was written in a "proposal" (which was to be done at a ridiculously low price). (It was generally explained that it was necessary to follow this procedure as collateral was necessary for some of the work and the remainder of the work was being done on a "signature loan.") It was explained to the customer that the work would be done in "phases"— the first being that covered by the contract. The other work was never done. The salesman (Terry or Smith) calling upon the customer explained the need for a notary signature to the contract and completion certificate, but received the approval for the notary to sign later. Additionally, the salesman explained to the customer that he would receive a telephone call from a financial company in Fort Worth and he should

acknowledge the work had been completed and he had appeared before the notary. Subsequently, a "Mechanics and Materialmen's Lien Contract" for the total amount of the contract price would be filed in the office of the county clerk. Each of the complainants testified that had they known all of the work represented to be done would not be done, they would not have signed the contract. As a result of the deceptive practices of appellants, some of the customers bound themselves for costs of, for instance, $21,000 for a central air conditioning system, and another, $21,000 for a roof (which the complainant knew, alone, would cost about $1,500).

■ In their first ground of error appellants attack the sufficiency of the evidence to sustain their convictions under count three of the indictments since Walter Buhl, the person alleged to have been deceived into executing the retail installment contract did not testify. A copy of the retail installment contract signed by both Mr. & Mrs. Buhl shows the name of the buyer to be Walter T. Buhl and wife Odeal. Mrs. Buhl testified, without objection, that there was no way she or her husband would have signed the contract if they had known that the other work promised would not be provided. Appellants declined to cross-examine Mrs. Buhl so as to show her testimony was not based on her personal knowledge. Mrs. Buhl was competent to testify as to her state of mind when she signed the contract and to give her opinion as to her husband's state of mind as she observed him sign the contract. Thus, we find there to be sufficient evidence to sustain the appellants' convictions under count three of the indictments. Appellants first ground of error is overruled.

■ In grounds of error two through five, appellant Terry alleges that the evidence is insufficient to establish his criminal responsibility for the offenses with which he is charged. The state had the burden of showing that appellant Terry acted with the intent to promote or assist the commission of the offense by soliciting, encouraging, directing, aiding, or attempt-

ing to aid appellant Smith in commiting the offense. TEX.PENAL CODE ANN. § 7.02(a)(2) (Vernon 1974). The court may look to events before and after the commission of an offense in order to determine whether an individual is a party to the offense and bears criminal responsibility therefor. Even circumstantial evidence may be sufficient to show one is a party to an offense. *Freeman v. State,* 654 S.W.2d 450, 454 (Tex.Crim.App.1983). The evidence brought out at trial established that: 1) Appellants Smith and Terry were long time friends, having gone to school together; 2) Terry trained Smith in the home improvement business; 3) Terry owned and operated the National Home Improvement Company; 4) Terry's company was paid for work done on the Parker, Buhl, Derbigney, and Kahlin residences; 5) Terry himself signed at least one of the above customers retail installment contracts. Further, the "Mechanics and Materialmen's Lien Contract with Power of Sale" obtained in each of the transactions with the Parkers, Buhls, Derbigneys and Kahlins was before the jury. Each was signed "Dirk Terry contractor/seller." Each instrument shows National Home Improvement Program sold "that certain indebtedness described in the foregoing Mechanics and Materialmen's contract with Power of Sale, together with the lien securing same" to Reliable Capital Corporation. Each assignment was signed "Dirk Terry" and acknowledged before "Julie M. Terry". (Appellant acknowledged his wife's name was Julie). Finally, there was evidence before the jury that when Terry, in responding to an inquiry from the Consumer Fraud Division of the Harris County District Attorney's office, went there to explain his side of the complaints the office had received from consumers, he denied that Henry Martin Smith and Don Emmons were the same person and stated that Don Emmons had been terminated "three or four weeks before" and that he didn't know his whereabouts. In fact, Smith (Emmons) had accompanied Terry to the District Attorney's office, had remained in the lobby area while Terry talked to the assistant district attorney, and was subsequently identified and arrested. (When the two were brought face to face, Terry refused to acknowledge Smith.) There was even evidence that when the authorities went to Terry's home to execute an arrest warrant he refused for an extended period of time to answer their knock and calls to him and only when the officers threatened forcible entry did he open the door. When the sufficiency of the evidence is challenged, we view the evidence in the light most favorable to the verdict. We conclude that the evidence was abundantly sufficient to show that appellant Terry did, with intent to promote or assist the commission of the offense, solicit, encourage, direct, aid, or attempt to aid appellant Smith in committing the offense. Therefore, grounds of error two through five are overruled.

In grounds of error six through nine, appellants claim the evidence is insufficient in counts two through five of their indictments to establish that execution of the retail installment contracts reproduced in the indictments "affected" property owned by those named in the indictments, respectively: Parker, Buhl, Kahlin, and Derbigney.

Mr. Parker, Mrs. Buhl, Mr. Kahlin, and Mr. Derbigney each referred to the homes covered by the pertinent retail installment contracts as "my home" or "my house." The evidence clearly shows that appellants would not do business with a customer who did not have a deed to his or her house. Each of the complainants occupied the properties in question and the presumption that one in possession is vested with title was not rebutted by appellants. *Whittle v. Johnston,* 392 S.W.2d 867 (Tex.Civ.App.— Texarkana 1965, writ ref'd n.r.e.). Appellants' contentions are not well taken.

Secondly, appellants contend the state failed to prove the installment contracts affected property of the complainants. By the terms of the statute, the offense is completed when a person causes another to execute a document "with the intent to defraud or harm...." There is

no requirement that the state prove the resulting harm. Each contract in question explicitly stated it was a "Home Improvement Agreement" and dealt with the installation of central air-conditioning in three instances and a roof in the fourth. Appellants' company is called the National Home Improvement Company. It seems almost too obvious to note that a home improvement contract is a document affecting property. Finally, the contract expressly granted "to Seller a builders Mechanics, Materialmen's and Laborer's lien upon the herein described real property and improvements located thereon." Grounds of error six through nine are not well taken and are overruled.

■ In ground of error number ten, appellants contend they were denied a fair trial because of the prosecuting attorney's comment that:

> ... There are at least fifty-five to sixty former customers of National Home Improvement Program. You have heard the testimony from fourteen. You know that this trial could have been a lot longer...

Appellants claim that even though the objection was sustained and the jury instructed to disregard it, the error was not cured. We disagree. First, there was some evidence through Terry's taped admission as to this number of contracts. Further, there was testimony that some "60 or 70 or 80" abstracts on work performed by National Home Improvement Program were received from the abstract company. This was some evidence that there were many more contacts than the jury had heard evidence on. However, assuming the impropriety of the comment, the instruction to disregard would be sufficient unless the remark was clearly calculated to inflame the minds of the jury and was of such a character to suggest the impossibility of withdrawing the impression produced on the minds of the jury. *Lopez v. State*, 643 S.W.2d 436 (Tex.App.—Corpus Christi 1982, pet. ref'd). We do not believe the prosecutor's breach to be this egregious. Any error was cured by the court's instruc-

tion to disregard. *Thomas v. State*, 578 S.W.2d 691 (Tex.Crim.App.1979). Appellants' tenth ground of error is overruled.

■ In ground of error eleven, appellants assert that the charge was fundamentally defective because it "merely required the jury to find that the appellant acted with the intent to defraud or harm, without specifying the person toward whom that intent was directed." For example, in pertinent part, Count Two of the indictment reads: "with intent to defraud and harm, JOHN A. PARKER, hereinafter styled the Complainant cause by deception the Complainant to sign," whereas in the corresponding charge to the jury the allegation is phrased: "did intentionally with the intent to defraud or harm, and by deception cause JOHN A. PARKER to sign...." The charge required the jury to find each essential element under the Penal Code. We think it obvious from a common sense reading that the only person appellant could have intended to defraud or harm was the complainant. *See Hawkins v. State*, 656 S.W.2d 70 (Tex.Crim.App.1983). However, even if error it was not calculated to injure the rights of appellants or deprive them of a fair and impartial trial. Therefore, no fundamental error is shown and ground of error number eleven is overruled.

■ Grounds of error twelve through fourteen present appellants' contention that the trial court erred in permitting the prosecuting attorney to bolster the testimony of state witnesses: Parker, Buhl, and Bibbs during his cross-examination of defense witness Garza. Each of the state's witnesses testified on cross-examination to having made a statement to a Capital Reliable Corporation representative to the effect that there was further work to be done on their respective homes. Following this statement the defense attorney made essentially the same remark to state witnesses Parker, Buhl, and Bibbs: "So, if the conversation (taped) between you and, let's say Mr. Carlos Garza the Capital Reliable Corporation, shows that you did not say

anything like that, then you're mistaken in what you're saying here today?"

When Mr. Garza was cross-examined by the prosecutor he was questioned as to the content of his conversation with Parker, Buhl, and Bibbs. We do not characterize this testimony as an attempt to bolster the uncontroverted statements of unimpeached witnesses. Whatever its merit, the defense attorney's remark to each of the witnesses was an attack on the veracity of their statements. Given this impeachment attempt, the complained of testimony was permissible corroboration. It was not clearly calculated to prejudice the appellants. Whatever label is attached to the complained of questioning involving Mr. Garza, we hold that the trial court cured any possible error by its instruction to disregard the remarks. *Thomas v. State*, 578 S.W.2d 691 (Tex. Crim.App.1979). These grounds of error are overruled.

■ Appellants argue in ground of error fifteen that the trial court erred in overruling their motions to quash all counts of the indictments for failure to allege the conduct of the appellants which constituted "deception" and for failure to describe the "affected" property. Omitting the formal allegations, each count of each indictment alleged that each appellant:

> did then and there unlawfully with intent to defraud and harm (the named complainant), hereafter styled the complainant cause by deception the complainant to sign and execute the document duplicated below which affected the complainants' property and pecuniary interest (and there was then attached a photocopy of the complete "Retail Installment Contract.")

We must first address a procedural matter. Notice of appeal for each appellant was given on May 27, 1982. Appellants never designated any material for inclusion in the appellate records pursuant to TEX.CODE. CRIM.PROC.ANN. 40.09(2) (Vernon 1981). Objections to the record were twice made because the transcript of the evidence had not been filed, but the record on appeal was finally approved without objection on

December 17, 1982 and the record was filed in this court on January 4, 1983. On March 17, 1983, each appellant filed his brief in this court and on March 28, 1983 appellants filed in this court a motion to supplement the appellate record, requesting that motions to quash the indictments be made a part of the record. The state filed written opposition to the motion and a panel of this court denied appellants' motion to supplement. Thereafter, on June 2, 1982 appellants filed a motion with the trial court to supplement the appellate record and requested that motions to quash be forwarded to this court. Thereafter, the trial court granted appellants' motion. (While not that material to our disposition of this matter, notice was neither given to the state nor was the matter set for hearing). The state has filed a motion in this court "To Declare Void Supplementation of the Records" and appellants have filed written opposition thereto. Basically, the state argues the trial court was without jurisdiction to supplement the appellate record after it was filed in this court. On the other hand, the appellants argue that "Article 44.11 does not prohibit supplementation of the appellate record pursuant to the trial court's authority under Article 40.09(7), V.A.C.C.P." In support of their argument appellants cite numerous cases where appellate records have, in fact, been supplemented by order of the trial court while the case is on appeal, and, even in some instances subsequent to the issuance of the original opinion. Appellants even cite *Deaton v. State*, 642 S.W.2d 247 (Tex.App.—Houston [14th Dist.] 1982, no pet.) where the appellate record was supplemented over appellants' objection after appellant had filed his brief. However, there this court stated that "[I]f we assume the trial court's supplementation of the record to be in error and disregard the supplementation of the record" the record as originally transmitted was sufficient to show no error.

■ We believe the issue before us is simple and none of the cases cited by either appellants or the state is controlling. We

hold that once the appellate record is approved and filed in the appellate court and a motion to supplement that record is then made in the appellate court and the court denies the motion, the trial court does not thereafter have the authority to order the record supplemented. We believe the orderly administration of justice commands this rule. Accordingly, we grant the "State's Motion to Declare Void appellants' Supplementation of the Records" and order the supplemental transcript filed in this court on July 8, 1983 stricken and returned to the Office of the Harris County District Clerk. The record before this court does not contain a motion to quash. Nothing is presented for this court to review. Appellants' fifteenth point of error is overruled.

In ground of error sixteen, error is asserted in the trial court's overruling of appellants' motion to suppress a video-taped interview of appellant Terry in which no *Miranda* warnings were given. *Miranda* warnings are required only in the context of a custodial interrogation. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The determinative issue in this case is whether appellant Terry was in custody at the time his interview with assistant district attorney Turbeville was video-taped.

Appellant Terry agreed to meet and discuss with Turbeville complaints received by the district attorney's office concerning Terry's home improvement business. Terry chose the time of the interview: approximately 11:30 a.m., August 27, 1981. The interview was held in a conference room at the District Attorney's Office Building. When Terry elected to terminate the interview, stating "it's attorney time," he left freely without harrassment.

A person is deemed to be in custody when a reasonable person under the same circumstances would believe himself not free to leave or break off police interrogation. *Stone v. State*, 583 S.W.2d 410 (Tex.Crim.App.1979). As the facts indicate, appellant Terry was not in custody when his interview with assistant district attorney Turbeville was video-taped, thus

no *Miranda* warnings were required. Ground of error sixteen is overruled.

We note that while the verdict of the jury is correctly recited in each judgment against each appellant assessing, in addition to confinement, "a fine of $2,500," the judgment itself recites "the court assessed a fine of $5,000." Each of the judgments against each appellant is reformed to correctly reflect that on each count of the indictment punishment was assessed at confinement in the Texas Department of Corrections for five years and in addition thereto a fine of $2,500.

As reformed, the judgments are affirmed.