ACCEPTED
03-14-00605-CR
7139507
THIRD COURT OF APPEALS
AUSTIN, TEXAS
9/29/2015 10:18:05 AM
JEFFREY D. KYLE
CLERK

CAUSE No. 03-14-00605-CR

IN THE COURT OF APPEALS
FOR THE THIRD COURT OF APPEALS DISTRICT
AUSTIN, TEXAS

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
9/29/2015 10:18:05 AM
JEFFREY D. KYLE
Clerk

Dr. HOWARD THOMAS DOUGLAS,
Appellant,

VS.

THE STATE OF TEXAS,
Appellee.

On appeal from Cause No. D-1-DC-10-900204, in the 331st Judicial District Court,
Travis County, Texas

## APPELLANT'S REPLY BRIEF

**TO THE HONORABLE THIRD COURT OF APPEALS:**

COMES NOW, Appellant, Dr. Howard Thomas Douglas (hereafter "Appellant"), and files his Appellant's Reply Brief, and in support thereof respectfully shows the following:

## I.

## ARGUMENT

### Reply Issue One

**No legally sufficient evidence supports the jurisdictional amount because State did not segregate the proper amounts billed from allegedly fraudulent amounts billed.**

This appeal presents a unique question of law: **In the prosecution for the**

APPELLANT'S REPLY BRIEF                                                    PAGE 1

offense of securing execution of a document by deception, pursuant to

Texas Penal Code Sec. 32.46(b)(5), must the State prove the value of the

property, service or pecuniary interest that was *actually secured by deception*?

This Court of Appeals, in a case involving similar facts and Appellant,

answered this question "no" when it held that the "State was not required to

determine and then segregate the false amount from the amount that might be

deemed legitimate had [Appellant's co-defendant therein, Western Medical

Evaluators] filed legally." *See Douglas v. State*, Cause No. 03-13-00092-CR, *1, at

p. 12 (Tex. App.—Austin, Aug. 26, 2015, n.p.h.), *a true and correct copy of which is*

*attached to the Appendix hereto as Exhibit "1."*

However, this Court of Appeals erred in holding that the state did not need to

segregate the value of the property, service or pecuniary interest that was actually

secured by deception from the value of the property, service or pecuniary interest

that was *not* secured by deception. *See Appellant's Motion for Rehearing and*

*Rehearing En Banc, a true and correct copy of which is attached to the Appendix*

*hereto as Exhibit "2."*

Because Appellant was charged with securing execution of a document by

deception as a third degree felony -- $20,000 or more but less than $100,000 -- the

State *was required* to prove a value of property, service or pecuniary interest that

was sufficient to satisfy the jurisdictional requirement of its pleading. *See Lehman v.*

*State*, 792 S.W.2d 82, 84 (Tex. Crim. App. 1990); *Simmons v. State*, 109 S.W.3d 469, 472 (Tex. Crim. App. 2003). *See also Lee v. State*, 29 S.W.3d 70, 575 (Tex. App.—Dallas 2000). In other words, the State had to prove that the value of the pecuniary interest of the portion of the documents that were executed as a result of Appellant's *deception* had to have an aggregate value of $20,000 or more but less than $100,000. Otherwise, the State would not have established the jurisdictional amount of the offense (*i.e.*, that it was a third degree felony) by legally sufficient evidence.

In holding that the State was not required to determine and then segregate the false amount from the amount that might be deemed legitimate had Appellant's co-defendant filed legally, *see Op.*, at p. 12, **this Court did not cite a single case, statute or other recognized legal authority** that would obviate the State's requirement to prove the value of the property, service or pecuniary interest secured by Appellant's alleged deception. *See* Tex. Pen Code Ann., sec. 32.46(a)(1). *See also State's Brief*, p. 36 (citing no authority).

The distinction between any false amounts and any legitimate amounts must be relevant because the elements require that an offense is committed only if the defendant, with intent to defraud or harm any person, *and by deception*, causes another to sign or execute any document affecting property or service or the pecuniary interest of any person. *Id.* In other words, to be an offense, the alleged

victim would not have acted *but for* the defendant's deception. *See Goldstein v. State*, 803 S.W.2d 777, 791 (Tex. App.—Dallas 1991, pet. ref'd); *Smith v. State*, 681 S.W.2d 71, 75-76 (Tex. App.—Houston [14th Dist.] 1983), *aff'd*, 722 S.W.2d 408 (Tex. Crim. App. 1986).

Presumably, this Court's rejection of the State's need to first "determine *and then* segregate" the false amount from any legitimate amount of the property, service or pecuniary interest involved has removed the amount of value as an essential element from an offense stated in Texas Penal Code Section 32.46. Rather, according to the Court's logic, the State need only allege a random value to the property, service or pecuniary interest involved, solely to set the degree of felony with which the State seeks to charge the defendant. *See* Tex. Penal Code Ann., Sec. 32.46(b)(5). Then, at trial, the State need only prove that the total value of the property, service or pecuniary interest involved falls within the particular degree of felony for the State to satisfy its burden of proof, regardless of whether that property, service or pecuniary interest involved was the result of deception. *See Op.*, at p. 12.

According to this Court's apparent interpretation of Section 32.46(b)(5), if the State alleged that the pecuniary interest involved was between $1,500.00 and $20,000.00 but the evidence at trial showed that only **$10.00** out of the total value of the pecuniary interest affected was the product of defendant's deception, and that the remaining value was the product of legitimate or non-deceptive conduct, then the

hypothetical defendant would still be guilty of a third-degree felony for securing the execution of a document by deception even though the alleged victim had been *defrauded* of only $10.00. *See Ex. "1," Op., at p. 12.*

Such a result is mandated if the State does not have to *first* determine and *then* segregate the false amount of the value of the property, service or pecuniary interest at issue from the amount that might be deemed legitimate. *See Ex. "1," Op.,* at p. 12.

There is no question that a portion of each check paid by Texas Mutual Insurance Company to Appellant included billing and payment for services that were actually and properly earned by Appellant's company. As a result, even the State prosecuted this case with the belief that it had to first determine and then segregate the value of the property, service or pecuniary interest that was actually obtained by deception from the value of the property, service or pecuniary interest that was *not* obtained by deception. [3 RR 71-85]

Although the State acknowledged its burden to segregate the value obtained by deception from the value obtained by legitimate or non-deceptive conduct, the State failed to discharge that burden because its testimony about the value obtained by deception constituted nothing more than mere speculation or factually unsupported inferences or presumptions. *Hooper v. State*, 214 S.W.3 9, 13 (Tex. Crim. App. 2007); *Appellant's Brief*, pp. 11-17.

Because the State failed to fully segregate the properly billed amounts from the amounts that were based on alleged deception or fraud, there was no legally sufficient evidence to establish the jurisdictional limits of this offense, and the State failed to satisfy its burden. *See Sowders v. State*, 693 S.W.2d 448, 450 (Tex. Crim. App. 1985) (when the State alleges an exact value for stolen property, it need not prove the exact value pled, but must only prove a value sufficient to satisfy the jurisdictional requirement of the State's pleading). *See Nitcholas v. State*, 524 S.W.2d 689, 691 (Tex. Crim. App. 1975). *See Lehman*, 792 S.W.2d at 84; *Simmons*, 109 S.W.3d at 472; *Lee*, 29 S.W.3d 75. *See also Appellant's Brief*, pp. 11-17.

In order for Appellant to be convicted of the offense of securing execution of a document by deception, the State had to establish by legally sufficient evidence the portion of the amount of each check relied upon in the indictment that was executed as a result of Appellant's *deception and fraud*. In other words, the State had to prove, beyond a reasonable doubt, the amount of each check that *did not* represent the value of services *actually rendered* by co-defendant NTME, and, therefore, was paid as a result of fraud.

The State presented testimony that NTME could not properly bill for time in which the physician or other healthcare provider (*i.e.*, nurse, technician, etc.) was not in the presence of the patient. Additionally, the State presented evidence that NTME had, in fact, billed TMIC for time that was not spent in a face-to-

face meetings or consultations with each patient. However, there is no question that a portion of each check paid by TMIC to NTME, and each invoice from NTME on which those checks were based, included billing and payment for services that were actually and properly earned by NTME [5 RR 108-116; State's Ex. 5]. As a result, *the State should have segregated the value of each document executed that was allegedly induced by Appellant's allegedly deceptive conduct from the value of each document that was not procured by fraud or deception.*

Ms. Haden admitted that TMIC was just guessing about the amount of time actually spent during the FCEs. [3 RR 115-16] Even the State's bank records, which showed payments from TMIC to NTME, cannot identify the actual amounts paid to NTME for allegedly fraudulent invoices:

Q: So all you can tell from Exhibits 15A and 15B is these were checks from Texas Mutual Insurance Company that were deposited in a North Texas Medical Evaluators bank?

A: Yes, sir.

\*\*\*

Q: Okay. So there is no way for you to tell, from Exhibits 15A and 15B, whether these payments are for FCEs *or for some other service*, correct?

A: No, sir.

Q: Okay. And you don't know if North Texas Medical Evaluators billed Texas Mutual Insurance Company for any other services, besides FCEs, do you?

A: No, sir.

[3 RR 174]

No other witness testified that TMIC was billed by NTME only for FCEs, nor did any witness testify that TMIC only paid for allegedly fraudulent FCEs. William Muhr, TMIC's senior fraud investigator, also participated in the investigation of NTME, and he also admitted that there was no rhyme nor reason behind which people he actually spoke with:

Q: Okay. You didn't try to talk to everybody, did you?

A: No, I did not.

Q: What determined who you tried to talk to?

A: There was no stipulation, just call people and find out how long the examination took.

[3 RR 188]

The State simply never bothered to *accurately segregate* the amount of the checks that were procured lawfully, and without deception, from the amount of the checks that allegedly were induced by Appellant's purported deception. As a result, the testimony showed that the State's statistical underpinnings that allegedly made up its proposed amount of purported fraud were clearly based on convenient and rudimentary math and not on actual conduct. *In other words, the jury was simply*

*guessing about the amounts of the documents that allegedly were secured by deception.*

Juries are permitted to draw multiple reasonable inferences as long as each inference is supported by the evidence presented at trial, **but juries are not permitted to come to conclusions based on mere speculation or factually unsupported inferences or presumptions.** *See, e.g., Megan Winfrey v. State*, 393 S.W.3d 763, 771 (Tex. Crim. App. 2013). "'[A]n inference is a conclusion reached by considering other facts and deducing a logical consequence from them,' while '[s]peculation is mere theorizing or guessing about the possible meaning of facts and evidence presented.'" *Id.* (quoting *Hooper v. State*, 214 S.W.3d 9, 16 [Tex.Crim.App. 2007]). A conclusion reached by speculation is not sufficiently based on facts or evidence to support a finding beyond a reasonable doubt. *Id.*

If the evidence presented at trial raises only a suspicion of guilt, even a strong one, then that evidence is insufficient to convict. *Richard Winfrey v. State*, 323 S.W.3d 875, 882 (Tex. Crim. App. 2010).

An alternative way of viewing this issue is to argue that the evidence was legally insufficient to show that TMIC's pecuniary interest had a value of $20,000 or more but less than $100,000. Section 32.46 of the Texas Penal Code, regarding securing execution of a document by deception, does not define the term "pecuniary interest." *See* Tex. Penal Code Ann., Sec. 32.46(a)(1). Thus,

the term is to be given its plain and ordinary meaning. *See Goldstein*, 803 S.W.2d at 791. The Dallas court of appeals has stated that "pecuniary" is a synonym for "financial" and that "pecuniary interest" means a direct interest related to money. *Fisher v. State*, 803 S.W.2d 828, 830 (Tex. App.—Dallas 1991, pet. ref'd).

Because the State failed to fully segregate the properly billed amounts from the amounts that were based on alleged deception or fraud, there was no legally sufficient evidence to establish the jurisdictional limits of this offense, and the State failed to satisfy its burden. *See Sowders v. State*, 693 S.W.2d 448, 450 (Tex. Crim. App. 1985) (when the State alleges an exact value for stolen property, it need not prove the exact value pled, but must only prove a value sufficient to satisfy the jurisdictional requirement of the State's pleading). *See Nitcholas v. State*, 524 S.W.2d 689, 691 (Tex. Crim. App. 1975). *See also Lehman*, 792 S.W.2d at 84; *Simmons*, 109 S.W.3d at 472. *See also Lee*, 29 S.W.3d at 75. To hold otherwise would allow the jury to convict Appellant on conduct that was decidedly *not* fraudulent or deceptive. Rather, the jury had to speculate as to the amounts that were proper by giving "credits" to NTME. *See Lehman*, 792 S.W.2d at 84; *Simmons*, 109 S.W.3d at 472. *See also Lee*, 29 S.W.3d at 75.

Because the jury had to guess at the value of the pecuniary interest that was induced by Appellant's allegedly deceptive conduct, no legally sufficient evidence

exists to support the jury's verdict, and this Court should reverse and render a judgment of acquittal in favor of Appellant.

## II.

### The trial court erred in refusing to admit evidence that TMIC provided funding to the State's prosecutors who prosecuted Appellant.

The State does not dispute that Texas Mutual Insurance Corporation had a financial relationship with the Travis County District Attorney's Office, in general, and specifically with the two prosecutors who tried this case against Appellant. *See State's Brief*, p. 39. The issues regarding this relationship on appeal are: (1) whether evidence of the relationship between TMIC and the Travis County District Attorney's Office (including the two assistant district attorneys who prosecuted Appellant) was **relevant** to Appellant's case, and (2) whether the trial court erred in excluding evidence of that relationship.

Like the argument in Issue One, the exclusion of such a relationship from the trial appears to be a case of first impression.

Relevance, in Texas jurisprudence, "means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Tex. R. Evid. 401.

TMIC pays for the salaries of two prosecutors, one paralegal and one part-time staff within the Workers' Compensation Fraud Unit of the DA's Public

Integrity Unit. [5 RR 60-68] As a result, TMIC, the alleged victim in this case, actually pays the salaries of the two prosecutors – Ms. Donna Crosby and Ms. Meg Brooks – who prosecuted Appellant for this matter.

Based on the discovery of this information, Defendant's counsel informed the trial court of his desire to question Ms. Crosby, in front of the jury, about the financial relationship between TMIC and the DA's Office. [5 RR 60-83] However, the trial court denied Appellant the right to present evidence to the jury of the financial relationship between TMIC and the State, and Appellant has repeatedly couched that objection based on the relevance of the excluded evidence. [5 RR 68–73, 83] Furthermore, the Court clearly stated that he would not permit such information to be admitted in front of the jury, based on the purported **lack of relevance**. [5 RR 77-83]

The State never contends in its brief that the arrangement between TMIC and the State adhered to ethical standards prohibiting conflicts of interest between the State and an alleged victim. *See State's Brief*, pp. 41-42. Instead, the State simply argues that the Appellant failed to preserve error as to this complaint and that the trial court did not abuse his discretion in excluding evidence of the State's financial relationship with TMIC. *Id.*, at pp. 41-42.

Appellant's reliance on ethical standards that prohibit conflicts of interest between the State and an alleged victim does not raise a separate point of error; the

issue that remains is whether evidence of the financial relationship between the State and TMIC was relevant because it showed the State's bias against Appellant and its willingness to prosecute the case at the insistence of the State's TMIC. *See Appellant's Brief*, pp. 31-38. Tex. R. Evid. 613.

Appellant's discussion of the ABA's Criminal Justice Standards and other authorities that reject the type of financial arrangement engaged in by the State and TMIC reveals that the trial court failed to follow any guiding principles and, therefore, abused its discretion in determining that evidence of the State's financial relationship with TMIC was relevant. *See* Roger A. Fairfax, Jr., *"Delegation of the Criminal Prosecution Function to Private Actors,"* 43 University of California Davis L. J. 411, 438 (2009).

It follows that if an alleged crime victim provides financial support to a state prosecuting authority, a defendant who is being prosecuted by that state prosecuting authority should, at the very least, be permitted to adduce evidence at trial of the financial relationship between the prosecutor and the alleged crime victim, thereby revealing to the jury the potential bias held by the State against the defendant. Tex. R. Evid. 613.

In this case, the trial court's exclusion of evidence about the financial relationship between the State and TMIC, the alleged victim, was painfully relevant. *See Montgomery v. State*, 810 S.W.2d 272, 291 (Tex.Crim.App. 1990)

(op. on rehearing). The jury should have been allowed to know that TMIC paid the salaries of the two prosecutors who were prosecuting Appellant for his alleged fraudulent conduct against TMIC, especially when in-house fraud investigators from TMIC, rather than an independent law enforcement agency, had conducted the investigation that led to Appellant being indicted by Ms. Crosby, who testified that she presents her own cases to the Grand Jury. A jury reasonably could have inferred that the DA's office acted as the personal attorneys for TMIC with respect to this case, and such a revelation would have complemented Appellant's argument that TMIC was strong-arming Appellant because it did not want to compensate him for the full 16 units that Appellant believed was compensable.

No judgment may be reversed on appeal on the ground that the trial court made an error of law unless the error complained of probably caused the rendition of an improper judgment. Tex. R. App. P. 44.1(a)(1). *See Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 906 (Tex. 2000); *Beam v. A.H. Chaney, Inc.*, 56 S.W.3d 920, 924 (Tex. App.—Fort Worth 2001, pet. denied) (court found no harmful error after holding that evidence should have been excluded pursuant to Rule 193.6[a]).

IV.

PRAYER

WHEREFORE PREMISES CONSIDERED, Appellant Howard Thomas Douglas respectfully moves this Court to reverse the verdict and judgment of the trial court and render a verdict of not guilty in favor of Appellant; or, in the alternative, reverse and remand this matter for a new trial because the trial court committed harmful error by refusing to allow Appellant to present evidence of the State's improper financial relationship with TMIC.

Respectfully submitted,

/S/ Craig M. Price
Craig M. Price
State Bar No. 16284170
Email address: cmp@hammerle.com
Hammerle Finley Law Firm
2871 Lake Vista Dr., Suite 150
Lewisville, Texas 75067
Telephone: (972) 436-9300
Facsimile: (972) 436-9000
Attorneys for Appellant

## CERTIFICATE OF SERVICE

This is to certify that on September 28, 2014, a true and correct copy of the above and foregoing document was served on the Travis County District Attorney Rosemary Lehmberg, via email to Lisa.Stewart@traviscountytx.gov.

/S/ Craig M. Price
Craig M. Price

## CERTIFICATE OF COMPLIANCE

The undersigned counsel hereby certifies, pursuant to Tex. R. App. 9.4(i)(4), that the foregoing Appellant's Brief contains a total of 3,357 words.

/S/ Craig M. Price
Craig M. Price

# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-13-00092-CR

Howard Thomas Douglas, Appellant

v.

The State of Texas, Appellee

FROM THE DISTRICT COURT OF TRAVIS COUNTY, 331ST JUDICIAL DISTRICT
NO. D-1-DC-10-900204, HONORABLE DAVID CRAIN, JUDGE PRESIDING

## MEMORANDUM OPINION

Howard Thomas Douglas was found guilty by a jury of the offense of securing execution of a document by deception, a felony of the third degree.[1] The trial court assessed his sentence at eight years' confinement in the Institutional Division of the Texas Department of Criminal Justice but suspended the sentence and placed him on community supervision for ten years. In addition, Douglas was ordered to pay a fine of $5,000 and restitution of $98,411.03. Douglas filed a motion for new trial, which the trial court denied. He appeals. We will affirm.

---

[1] We note that the judgment does not correctly conform to the procedures at trial. Although the finding of guilt and the sentencing portion are correct, the judgment recites that Douglas waived a jury and pleaded guilty, when in fact he pleaded not guilty and submitted the case to the jury. While the jury was deliberating punishment, Douglas waived the jury and submitted punishment to the trial court.

Blumberg No. 5114 · DEFENDANT'S EXHIBIT [

# BACKGROUND

In about 2004, Douglas, a medical doctor, and his 23-year-old daughter, Barbara Douglas, established a business called Western Medical Evaluators, Inc. (WME).[2] Douglas was the medical director and Barbara was named president of the company. WME provided medical services in the workers' compensation sector to entities insured by Texas Mutual Insurance Company. WME contracted with designated doctors to perform designated doctor examinations (DDE) on patients claiming workers' compensation benefits. Designated doctors travel all over the state performing their examinations. The purpose of a DDE is to obtain an independent assessment of the injured employee's condition at the request of the Texas Department of Insurance (the Department). Douglas also performed examinations himself.

During the course of performing a DDE, the designated doctor may request a functional capacity evaluation (FCE) of the employee to determine the employee's ability to return to work or perform certain jobs. An FCE is administered by a technician. WME employed several technicians who accompanied doctors to patient examinations. Upon the doctor's order, a technician performed the FCE while still with the patient. After performing an examination, WME billed Texas Mutual by means of a form entitled HCFA 1500. The form is completed by employing codes, known as CPT codes, to inform the insurance company what test or exam was performed in the examination and the amount of time it took.[3] The form reflects the time the doctor or technician spent on the matter in increments of quarter hours.

---

[2] For clarity, we will refer to appellant's daughter by her first name.

[3] The code for an FCE is 97750 or 97750FC.

2

When WME was first formed, it only performed DDE exams and Douglas was the only doctor. Later, the company added other doctors and staff and began administering FCE exams. The designated doctors receive about 60% of the charges for a DDE; WME received almost all of the compensation for an FCE.

The evidence was undisputed that, under the medical guidelines, the maximum amount of time that can be billed for an FCE is 16 quarter-hour increments, or 4 hours. Based upon the HCFA 1500 form submitted, Texas Mutual would issue a check to WME. Texas Mutual issued checks to WME totaling $103,821.99 during the time period at issue.

William Muhr, an investigator for Texas Mutual, became suspicious when he recognized that every bill received from WME requested the maximum compensation of 4 hours for every FCE. Muhr spoke to 146 patients examined by WME and determined that the average time the WME technician actually spent with patients was only 39 minutes. Muhr filed a complaint with the Travis County District Attorney's Office. The underlying prosecution ensued.

Douglas, Barbara, and WME were each charged in separate indictments with the offense of securing execution of documents by deception. *See* Tex. Penal Code § 32.46(a)(1).[4] That is, to paraphrase as to Douglas, the State alleged that, pursuant to a scheme or course of conduct and with intent to defraud or harm Texas Mutual, Douglas by deception created or confirmed a false impression of fact by causing HCFA forms to be submitted to Texas Mutual for payment of services of sixteen units when these services were not rendered, not believing it to be true, which

---

[4] A person commits an offense if, with intent to defraud or harm any person, he, by deception, causes another to sign or execute any document affecting property or service or the pecuniary interest of any person. Tex. Penal Code § 32.46(a)(1).

3

deception caused Texas Mutual to execute documents affecting its property. The pecuniary value of the property affected was alleged to be $20,000 or more but less than $100,000. Thus, the offense charged was a third degree felony. *Id.* § 32.46(b)(5).[5] Douglas and WME were tried together, although by the time of trial WME had ceased functioning and was out of business. Before her father's trial, Barbara pleaded no contest to her charges and received deferred adjudication. She testified at trial, as did Douglas.

Douglas complains on appeal that the evidence at trial was legally insufficient to prove that he acted with the intent to defraud or harm, that he engaged in deception that caused Texas Mutual to execute any document, or that the pecuniary amount of the documents met the jurisdictional amount required for a third degree felony. He also complains that the evidence did not support the amount of restitution ordered. In the alternative, Douglas requests a new trial on the basis that he was denied effective assistance of counsel.

## DISCUSSION

### Legal sufficiency of evidence supporting conviction

When reviewing the sufficiency of the evidence to support a criminal conviction, the appellate court must examine the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a

---

[5] The offense is a felony of the third degree if the value of the property, service, or pecuniary interest is $20,000 or more but less than $100,000. *Id.* § 32.46(a)(5). The indictment includes a list of Texas Mutual payments by patients' names, dates, amounts charged, and amounts paid, and the State introduced voluminous records into evidence to support the charges. The State abandoned payments received after January 31, 2008, and the indictment was amended to reflect the amendment.

4

reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). We must keep in mind that it is the factfinder's duty to weigh the evidence, resolve any conflicts, and make reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319. We presume that any conflicting inferences were resolved in favor of conviction, and we defer to that resolution. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

The underlying basis for the criminal allegations arose out of the amount of time and, therefore, money that WME charged Texas Mutual for performing FCEs. As Douglas acknowledges in his brief, the State presented testimony from numerous witnesses that WME was not entitled to bill for time in which the physician or other health care provider was not in the presence of the patient. He also recognizes that the State presented evidence that WME had, in fact, billed Texas Mutual for time that was not spent in face-to-face meetings or consultations with each patient. In his testimony, Douglas acknowledged that WME billed for time not spent with the patient and that it was his decision to bill the maximum time for each FCE, but he insists that the practice was justified.

Martha Luevano, an employee of the Department's Workers' Compensation Division, testified about the medical fee guidelines, Labor Code Rules, and American Medical Association CPT Codes used in Texas that describe, define, and govern FCEs and the billing and paying of FCE fees. She testified that compensation for an FCE requires direct one-on-one patient contact and can only be billed for actual time spent face-to-face with a patient, billed in quarter-hour increments, for

a maximum of 16 units, or 4 hours.[6] Preparation time and time spent generating a report cannot be included in billing time. The Department has a website, training, and a dedicated telephone help line for medical providers. She was not aware of any communication that WME or Douglas had attempted with the Department concerning FCE billing.

Three patients and several WME technicians were among the witnesses who testified. The patients testified that the FCE took only 15 to 30 minutes. One patient stated that she did not undergo a second FCE, although WME billed for a second one. Three technicians testified that "face to face" time with a patient for an FCE took between 15 to 40 minutes, 45 minutes to an hour, and 25 to 35 minutes, respectively. The reports took 10 to 15 minutes to complete. No one spent four hours on an FCE, although WME billed the maximum for each one. One technician testified that technicians were paid an extra $25 as an incentive to do more FCEs.

The head of WME's accounts receivable, Michelle Worden, testified that an exam room was across from her office and that the exams took about 30 minutes. According to her, there was a directive from Douglas to bill the maximum on all FCEs. When she refused to collect the maximum on inflated bills, Barbara fired her.

The manager of WME's accounts receivable, Kenna Johnson, had an office near the exam rooms. The longest exams took 45 minutes. She never saw one take 4 hours. She noticed that

---

[6] The CPT code for an FCE reads as follows:

**Tests and Measurements**
Requires direct one-on-one patient contact.
*****
97750 Physical performance test or measurement (e.g., musculoskeletal, functional capacity), with written report, each 15 minutes.

6

the number of FCEs increased and that every exam began to have an FCE, all billed at 4 hours. Johnson told Barbara that the bills were not correct. Barbara informed Johnson that Douglas had talked to the Department and that WME's billing was perfectly fine, which Johnson did not believe. Johnson refused to collect on the bills, and Barbara fired her.

Lena Schockley worked in accounts receivable and billing. She testified that Douglas and Barbara told the technicians to perform an FCE on every patient, even if the doctor did not request one. If the report showed that no FCE was needed, Shockley was instructed to change the report to reflect that an FCE was needed; Barbara told her to bill each FCE at 4 hours. If the report showed only 6 units of time were spent with the patient, employees were instructed to put a 1 in front of the 6, to reflect 16 units of time, the maximum.

Mimi Stout, who worked in accounts receivable, testified that an FCE was always billed at 4 hours. She was one of several WME employees who drove to Austin to report the inappropriate billing to the Department.

Warren King solicited insurance companies and designated doctors for WME. He noticed that every patient had an FCE and that every one was billed at 4 hours. One tech billed 12 FCEs in 1 day—each requesting 4 hours' compensation. King testified that an FCE takes 15 minutes to 2 hours. He was concerned that these exams were being done without doctors' orders and were being billed for more than the time taken. He was one of the employees who reported fraudulent billing to the Department.

Douglas left WME in early 2008. The new medical director who replaced Douglas, Dr. Jerry Franz, noticed that too many FCEs were being performed and that some techs were billing 10 to 12 per day. Franz informed the technicians that they could no longer perform an FCE unless

7

a doctor ordered one, and that they required accurate time keeping for billing. He was one of the employees who reported inappropriate billing to the Department.

Barbara testified that when her father first established the company, WME only did DDE examinations. Eventually, the company began doing FCE exams. When they found out that the cap for FCEs was 4 hours, she and her father decided to charge the maximum. She claimed that they did not intend to defraud Texas Mutual by doing so, even though she conceded that an FCE did not take 4 hours. She identified two letters in which Douglas stated that WME would do an FCE on all patients. She did not explain why the company charged the maximum fee but acknowledged that the work was lucrative; she estimated that charges for FCEs equaled about $1,000,000 in a year.

Douglas testified on his own behalf. When he began performing FCEs, he stated that he called other doctors' offices about how to bill, although he did not offer any other doctor to testify on FCE billing. He also claimed to have called the Department, although its records did not reflect an inquiry regarding FCEs, only DDEs.

Douglas disputed the amount his business should be entitled to legally bill for an FCE. He insisted that, despite the State's construction of the rules, WME could bill for all the time a doctor or agent spent on a patient's matter, in addition to time with the patient, including arranging for the appointment and travel, preparing for the exam, obtaining records, reviewing records in advance, working on the patient's file, and preparing a report after the exam. He personally did a time study to determine how long these matters required and concluded that, on average, the whole process took 4.5 to 5.5 hours, sometimes over a 2-week period or so. Based on his own conclusion about the average time required, he made the decision to bill the maximum 4 hours on every FCE

8

without regard to actual time each required; the billing form reflected that the 4 hours was on 1 day. He confirmed that it was his decision for WME to bill 4 hours on every FCE.

Because in his view an FCE required advance preparation and review of the patient's records, he believed that he could bill this time. At the same time, he acknowledged that the DDE exam also required arranging for location and travel, obtaining patient's records, and reviewing them in advance, and that this work was properly included in billing for a DDE. He did not distinguish the preparation time relating to a DDE from any time related to an FCE or explain whether the same time and work was being billed for both a DDE and an FCE on one patient. He also could not explain why work was required in advance of an FCE, in light of the fact that there was no way to know whether a doctor would request an FCE until the DDE examination itself, other than to say that the preparation was performed in case the doctor requested one.

Douglas denied telling the technicians to perform an FCE on every patient; he did not remember signing letters to the contrary on his letterhead that were in evidence, and he denied that it was his signature on the letters. Apart from the letters, however, he acknowledged that WME began doing an FCE on almost every patient in anticipation that the doctor might want one. He stated that the company did not charge for the ones the doctor did not want, but he admitted that they could have charged for these also, as he did not work in billing.

The CPT code does not make any reference to arrangements, travel, or pre-examination preparation; Douglas admitted that this time was included in his decision to bill the maximum. Douglas insisted, however, that he was at least entitled to bill for preparing a written post-exam report concerning the FCE because a report was mentioned in the code description.

9

He denied an intent to defraud Texas Mutual, but a large portion of his testimony was spent contradicting the State and justifying the billing method utilized. He never denied that every FCE performed was billed at the maximum four hours. He implied that his billing practice was a mistake because he believed that he was justified in billing as WME did; at the same time, he insisted that the billing method was reasonable and proper and denied that the billing procedure violated the medical fee guidelines. He did not contend that he was operating under a mistaken understanding of the rules; instead, he insisted that the State's construction was incorrect, he disagreed with it, and his construction was correct.

Douglas offered the testimony of Konrad Kuenstler, an attorney and physical therapist who has performed over 1,000 FCEs. Kuenstler testified that doctors can bill for the time spent on medical review and written reports. Kuenstler worked in Texas until about 2009 but practiced law in California at the time of trial.

Douglas argues that the evidence failed to prove that he: (1) acted with intent to defraud or harm Texas Mutual because the State failed to adduce evidence that he personally sent inflated invoices to Texas Mutual or authorized WME to bill for unauthorized fees; (2) engaged in any deception with respect to the bills sent to Texas Mutual; or (3) caused the forms HCFA 1500 to be submitted to Texas Mutual for payment. We disagree. He also argues that the State was required to prove that but for his conduct, Texas Mutual would not have paid the fees it did.

A person acts with intent with respect to his conduct when it is his conscious objective or desire to engage in the conduct or cause the result. Tex. Penal Code § 6.03(a). Intent to deceive can be inferred from the accused's acts, words, and conduct. *Goldstein v. State*, 803 S.W.2d 777, 791 (Tex. App.—Dallas 1991, pet. ref'd). A person engages in deception by creating or

10

confirming by words or conduct a false impression of law or fact that is likely to affect the judgment of another in the transaction, and that the actor does not believe to be true. Tex. Penal Code § 31.01(1)(A).

Douglas was the medical director for WME. Although Barbara was the president, it was not shown that she had any medical training. Our review of the evidence reveals that Douglas, as the owner and medical director of the company, acting alone or in concert with Barbara, established WME's policy for submitting its bills to Texas Mutual, that he determined that it should submit four hours on every FCE, regardless of the actual time required, that he knew that WME was submitting bills for time not spent with the patient, and that he knew this was done for the purpose of causing Texas Mutual to pay fees based upon the forms submitted.

Douglas also argues that Barbara was clearly an accomplice witness as a matter of law, whose testimony was uncorroborated and thus must be excluded, leaving no legally sufficient evidence to support the verdict. Again, we must disagree. Even assuming that Barbara should be considered an accomplice, her testimony was corroborated by employees who worked at WME, by patients, and by Douglas himself. Nothing in her testimony contradicted his version of facts, except the two letters she identified on his letterhead. These letters, however, were written to designated doctors, explaining the benefit of FCEs for their examination and the reason that WME intended to perform an FCE on most patients in the future, a fact that Douglas himself confirmed. Like Douglas, Barbara testified that neither she, WME, nor Douglas acted with intent to defraud or deceive Texas Mutual.

Finally, Douglas insists that the evidence is legally insufficient to prove the jurisdictional amount required to classify the offense as a third degree felony because with respect

11

to each payment Texas Mutual made, the State failed to segregate the portion paid for services actually rendered from the amount the State alleged was fraudulently billed. For the same reason, he contends, the evidence does not support the amount of restitution he is ordered to pay.

The evidence showed that Texas Mutual was defrauded into paying WME based upon falsified form requests. The fact that WME may have been entitled to partial payment for work actually done had it filed correctly does not defeat the fact that the requests for payment it did file were untrue. Each form was incorrect because each contained false information. The State was not required to determine and then segregate the false amount from the amount that might be deemed legitimate had WME filed legally. Thus, the evidence proves that the pecuniary value of the property Texas Mutual transferred was within the range of a third degree felony and based upon the evidence restitution was properly ordered. Further, because Douglas did not object to the amount of restitution ordered by the trial court, such complaint is waived. *See Gutierrez-Rodriguez v. State*, 444 S.W.3d 21, 23-24 (Tex. Crim. App. 2014).

**Ineffective assistance of counsel**

Douglas served as the corporate representative for WME at trial, although WME was treated almost as an afterthought at trial, since it was no longer in business. Douglas has new counsel on appeal who did not serve as trial counsel. He contends that his trial counsel rendered him ineffective assistance because counsel allowed the State to consolidate Douglas's case with that of the corporation WME, allowed the State to consolidate without a formal motion for consolidation, failed to request a severance from WME, and failed to request an instruction on mistake of fact or due diligence of a corporation. The charge submitted to the jury was identical as to both Douglas

12

and WME and was submitted in a single charge but the jury was instructed that Douglas and WME were subject to decision separately and that the jury could decide the same or different verdicts for each. Douglas did not object at trial to the joint trial or to the jury charge.

A defendant who claims he is entitled to a reversal of his conviction because his counsel rendered ineffective assistance must show that his counsel's representation failed to meet a two-pronged test. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984); *Hernandez v. State*, 726 S.W.2d 53, 55 (Tex. Crim. App. 1986). An appellant must show by a preponderance of the evidence that (1) his counsel's representation was deficient and fell below an objective standard of reasonableness, and (2) the deficient representation caused him prejudice, in that there is a reasonable probability that, but for counsel's deficiency, the result of the trial would have been different. *Strickland*, 466 U.S. at 687; *Andrews v. State*, 159 S.W.3d 98, 101-02 (Tex. Crim. App. 2005); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). A failure to make a showing under either prong of the *Strickland* test defeats the claim. *Andrews*, 159 S.W.3d at 101; *Rylander v. State*, 101 S.W.3d 107, 110-11 (Tex. Crim. App. 2003).

The appellate court considers the totality of the evidence to determine whether, but for counsel's errors, the jury would have had a reasonable doubt concerning the defendant's guilt. *Strickland*, 466 U.S. at 694-95; *see Hernandez*, 726 S.W.2d at 56-57.

Allegations of ineffective counsel must be firmly founded in the record. *McFarland v. State*, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996). Our review of counsel's performance must be highly deferential. *Andrews*, 159 S.W.3d at 101. There is a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance, and the defendant must overcome that presumption. *Strickland*, 466 U.S. at 688-89. A claimant must generally prove

13

deficiency using affirmative evidence in the trial record sufficient to overcome the presumption. *See id.* at 689; *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011).

To prove prejudice, a claimant must establish a "reasonable probability" that the result of the proceeding would have been different if counsel had not been deficient. *Strickland*, 466 U.S. at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome of the trial. *Id.* Whether there is a reasonable probability that confidence in the outcome of the trial is undermined can turn on evidence adduced at trial because "a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Id.* at 696.

Trial counsel should be afforded an opportunity to explain his actions. *Bone v. State*, 77 S.W.3d 828, 836 (Tex. Crim. App. 2002). Under normal circumstances, therefore, the record on direct appeal will not be sufficient to show that counsel's representation was so deficient and so lacking as to overcome the presumption that counsel's representation was reasonable and professional. *Id.* at 833; *Mitchell v. State*, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002). A record on ineffective assistance is best developed in an evidentiary hearing on a motion for new trial or application for writ of habeas corpus. *Rylander*, 101 S.W.3d at 110.

The Texas Court of Criminal Appeals has stated that a motion for new trial is not required in order to raise ineffective assistance of counsel on appeal, partly because of the time limit on filing a motion and because of the awkward situation of expecting trial counsel to challenge his or her own legal assistance. *Robinson v. State*, 16 S.W.3d 808, 809-11 (Tex. Crim. App. 2000) (holding failure to file motion for new trial does not procedurally prohibit appellate claim of ineffective assistance of counsel). In this instance, however, Douglas retained appellate counsel

14

who timely filed a motion for new trial with the trial court. In his motion, he alleged ineffective assistance of counsel at trial; however, the basis for the complaint was different at trial than he now urges on appeal. Douglas did not complain below that his trial counsel was ineffective because the two causes were tried together, that this procedure was undertaken without a formal motion, or that trial counsel failed to request a severance. Further, appellate counsel did not complain that trial counsel failed to request an instruction on mistake of fact or due diligence of a corporation. No hearing was held on the motion for new trial.

We believe that in this instance we could hold that Douglas waived this issue by not raising it below. However, assuming that it is not waived, based upon this record, and applying the correct legal review, we cannot say that Douglas has shown that trial counsel rendered him ineffective assistance. *See, e.g., Okonkwo v. State*, 398 S.W.3d 689, 696 (Tex. Crim. App. 2013) (rejecting appellant's argument that his counsel was ineffective in failing to request instruction on mistake of fact because that instruction would have required jury to determine whether appellant's mistaken belief was reasonable and would have allowed for conviction on lessened burden of proof if jury concluded that his mistake was unreasonable); *Burton v. State*, No. 14-06-00022-CR, 2007 Tex. App. LEXIS 5000, at *6 (Tex. App.—Houston [14th Dist.] June 28, 2007, no pet.) (not designated for publication) (mem. op.) (concluding that appellant did not overcome presumption that his counsel's failure to seek accomplice or co-conspirator instruction was sound trial strategy because record was silent as to trial counsel's reasons for that decision); *Woods v. State*, 998 S.W.2d 633, 635 (Tex. App.—Houston [1st Dist.] 1999, pet. ref'd) (concluding that appellant did not overcome presumption that his counsel's failure to seek severance was sound trial strategy because record was silent as to trial counsel's reasons for that decision); *see also* Tex. Penal Code § 7.24 cmt.

15

(West 1974) (noting that due diligence defense for corporation does not apply to felony prosecutions); 6 Michael B. Charlton, *Texas Practice Series: Texas Criminal Law* § 5.7 (2d ed. 2001) (same).

## CONCLUSION

We hold that there is legally sufficient evidence to support the verdict and that Douglas has failed to show on this record that his trial counsel rendered him ineffective assistance of counsel.

We overrule the issues on appeal and affirm the judgment.

_____

Marilyn Aboussie, Justice

Before Chief Justice Rose, Justices Bourland and Aboussie*

Affirmed

Filed:  August 26, 2015

Do Not Publish

* Before Marilyn Aboussie, Chief Justice (retired), Third Court of Appeals, sitting by assignment. *See* Tex. Gov't Code § 74.003(b).

ACCEPTED
03-13-00092-CR
6875842
THIRD COURT OF APPEALS
AUSTIN, TEXAS
9/10/2015 4:58:17 PM
JEFFREY D. KYLE
CLERK

CAUSE No. 03-13-00092-CR

IN THE COURT OF APPEALS

FOR THE THIRD COURT OF APPEALS DISTRICT

AUSTIN, TEXAS

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
9/10/2015 4:58:17 PM
JEFFREY D. KYLE
Clerk

Dr. HOWARD THOMAS DOUGLAS,
Appellant,

VS.

THE STATE OF TEXAS,
Appellee.

On appeal from Cause No. D-1-DC-10-900204, in the 331st Judicial District Court,
Travis County, Texas

## APPELLANT'S MOTION FOR REHEARING AND MOTION FOR REHEARING *EN BANC*

TO THE HONORABLE THIRD COURT OF APPEALS:

COMES NOW, Appellant, Dr. Howard Thomas Douglas, and files his

Motion for Rehearing and Motion for Rehearing *En Banc*, pursuant to Texas R.

App. P. 49.1 and 49.7, and states that this Court should grant a rehearing or, in the

alternative, rehearing *en banc*, and after rehearing reverse the judgment against

Appellant and render a verdict of acquittal in his favor, and in support thereof

respectfully shows this Court the following:



APPELLANT'S MOTION FOR REHEARING                                    PAGE 1

# I.

## Court Erred In Holding That State Did Not Have To Prove
## Value of Pecuniary Interest Obtained By Fraud

This appeal presents what appears to be a case of first impression. In the prosecution for the offense of securing execution of a document by deception, pursuant to Texas Penal Code Sec. 32.46(b)(5), must the State prove the value of the property, service or pecuniary interest that was *actually secured by deception*?

Stated another way, must the State prove *the amount by which the victim was defrauded* in order to determine the jurisdictional amount of the offense, or the degree of felony of which the defendant is to be punished?

The Court of Appeals answered this question "no" when it held that the "State was not required to determine and then segregate the false amount from the amount that might be deemed legitimate had WME filed legally." *Op.*, at p. 12.

**The Court of Appeals erred in holding that the state did not need to segregate the value of the property, service or pecuniary interest that was actually secured by deception from the value of the property, service or pecuniary interest that was *not* secured by deception.**

After rehearing, the Court of Appeals should withdraw its current opinion, reverse its judgment in this matter and render a verdict of acquittal for Appellant

because the evidence was legally insufficient to establish the value of the property, service or pecuniary interest that was secured by deception.

Because Appellant was charged with securing execution of a document by deception as a third degree felony -- $20,000 or more but less than $100,000 -- the State *was required* to prove a value of property, service or pecuniary interest that was sufficient to satisfy the jurisdictional requirement of its pleading. *See Lehman v. State*, 792 S.W.2d 82, 84 (Tex. Crim. App. 1990); *Simmons v. State*, 109 S.W.3d 469, 472 (Tex. Crim. App. 2003). *See also Lee v. State*, 29 S.W.3d 70, 575 (Tex. App.—Dallas 2000). In other words, the State had to prove that the value of the pecuniary interest of the portion of the documents that were executed as a result of Appellant's *deception* had to have an aggregate value of $20,000 or more but less than $100,000. Otherwise, the State would not have established the jurisdictional amount of the offense (*i.e.*, that it was a third degree felony) by legally sufficient evidence.

In holding that the State was not required to determine and then segregate the false amount from the amount that might be deemed legitimate had WME filed legally, *see Op.*, at p. 12, this Court did not cite a single case, statute or other recognized legal authority that would obviate the State's requirement to prove the value of the property, service or pecuniary interest secured by Appellant's alleged deception. *See* Tex. Pen Code Ann., sec. 32.46(a)(1) ("A person commits an

offense if, with intent to defraud or harm any person, he, by deception, causes another to sign or execute any document affecting "property or service or the pecuniary interest of any person . . . .") (emphasis added).

The distinction between any false amounts and any legitimate amounts must be relevant because the offense requires that the offense is committed only if the defendant, with intent to defraud or harm any person, *and by deception*, causes another to sign or execute any document affecting property or service or the pecuniary interest of any person. *Id.* In other words, to be an offense, the alleged victim would not have acted *but for* the defendant's deception. *See Goldstein v. State*, 803 S.W.2d 777, 791 (Tex. App.—Dallas 1991, pet. ref'd); *Smith v. State*, 681 S.W.2d 71, 75-76 (Tex. App.—Houston [14th Dist.] 1983), *aff'd*, 722 S.W.2d 408 (Tex. Crim. App. 1986).

Presumably, this Court's dismissal of the State's need to first "determine *and then* segregate" the false amount from any legitimate amount of the property, service or pecuniary interest involved has removed the amount of value as an essential element from an offense stated in Texas Penal Code Section 32.46. Rather, according to the Court's logic, the State need only allege a random value to the property, service or pecuniary interest involved, solely to set the degree of felony with which the State seeks to charge the defendant. *See* Tex. Penal Code Ann., Sec. 32.4(b)(5). Then, at trial, the State need only prove that the total value

of the property, service or pecuniary interest involved – regardless of whether that value was the result of deception – falls within the particular degree of felony for the State to satisfy its burden of proof.

In other words, if the State alleged that the pecuniary interest involved was between $1,500.00 and $20,000.00, a third degree felony, but the evidence at trial showed that only $10.00 out of the total $1,500.00 of the pecuniary interest affected was the product of defendant's deception, and that the remaining value was the product of legitimate or non-deceptive conduct, then the hypothetical defendant would still be guilty of the third-degree felony for securing the execution of a document by deception.

Such a result would be mandated if the State, as permitted by this Court of Appeals, did not have to *first* determine and *then* segregate the false amount from the amount that might be deemed legitimate. *See Op.*, at p. 12.

This cannot be the law.

In fact, even the State did not believe this to be the law at the time of trial because the State tried to segregate the value of the property, service or pecuniary interest obtained by deception from the value of the property, service or pecuniary interest that was obtained by legitimate or non-deceptive conduct.  [3 RR 71-85]

The State not only had to guess at the length of the actual functional capacity evaluations, but it also had to admit that a portion of each test was legitimate and,

therefore, not all of the payment was secured by alleged deception; rather, at least a portion of each document was based on legitimate entitlement to payment:

> State: Okay. The first one [reviewing State's Ex. 15, p. 4], it says TMI, two units. Is that giving [WME] credit for doing two units' worth of work –
>
> Muhr: Yes. 30 minutes.
>
>    * * *
>
> State: *And so that's not saying that they didn't do any work with these people*. That's giving them credit for either 30 minutes to an hour. Is that correct?
>
> Muhr: That is correct.

[3 RR 83-85 (emphasis added)]

There is no question that a portion of each check paid by Texas Mutual Insurance Company to Western Medical Evaluators ("WME") included billing and payment for services that were actually and properly earned by WME. [3 RR 84 ("And so that's not saying that they didn't do any work with these people.")]

As a result, even the State prosecuted this case with the belief that it had to first determine and then segregate the value of the property, service or pecuniary interest that was actually obtained by deception from the value of the property, service or pecuniary interest that was *not* obtained by deception. *Compare with Op.*, at p. 12.

Although the State acknowledged its burden to segregate the value obtained by deception from the value obtained by legitimate or non-deceptive conduct, the State failed to discharge that burden because its testimony about the value obtained by deception constituted nothing more than mere speculation or factually unsupported inferences or presumptions. *Hooper v. State*, 214 S.W.3 9, 13 (Tex. Crim. App. 2007); *Appellant's Brief*, pp. 11-17.

Because the State failed to fully segregate the properly billed amounts from the amounts that were based on alleged deception or fraud, there was no legally sufficient evidence to establish the jurisdictional limits of this offense, and the State failed to satisfy its burden. *See Sowders v. State*, 693 S.W.2d 448, 450 (Tex. Crim. App. 1985) (when the State alleges an exact value for stolen property, it need not prove the exact value pled, but must only prove a value sufficient to satisfy the jurisdictional requirement of the State's pleading). *See Nitcholas v. State*, 524 S.W.2d 689, 691 (Tex. Crim. App. 1975). *See Lehman*, 792 S.W.2d at 84; *Simmons*, 109 S.W.3d at 472; *Lee*, 29 S.W.3d 75. *See also Appellant's Brief*, pp. 11-17.

This Court should grant Appellant's motion for rehearing or motion for rehearing *en banc* and, on rehearing, reverse the judgment of the Court of Appeals and render a verdict of acquittal in favor of Appellant.

## II.

## Court Erred In Holding That Appellant Waived Complaint About Amount Of Restitution.

The Court also erred in holding that Appellant waived any complaint about the amount of restitution because he did not object to the amount of restitution ordered by the trial court. *See Op.*, at p. 12.

An appellate court reviews challenges to restitution under an abuse of discretion standard. One of the due process considerations underlying a review of restitution requires that the amount must be just and supported by a factual basis within the record. *Campbell v. State*, 5 S.W.3d 693, 697 (Tex. Crim. App. 1999).

In holding that Appellant waived any complaint about restitution by not objecting to the amount ordered by the trial court, this Court simply cited, without any analysis, the Texas Court of Criminal Appeals' decision in *Gutierrez-Rodriguez v. State*, 444 S.W.3d 21 (Tex. Crim. App. 2014) (which was issued well after the trial in Appellant's case). *See Op.*, at p. 12.

The Court of Criminal Appeals did not distinguish between an argument that restitution is not authorized versus an argument that the evidence is not sufficient to support the amount of restitution. *Gutierrez-Rodriguez*, 444 S.W.3d at 23-24, n.20. Rather, the Court based its decision on the assumption that a sentence of probation, conferred by the judge, "extends clemency to the defendant and creates

a sort of contractual relationship" between the defendant and the trial court. *Id.* Based on this contractual relationship, then, the defendant must object to the imposition of restitution or otherwise accept the terms of the probation "contract." *Id.*

The Court of Criminal Appeals did not specify the method by which a defendant must object to or complain about restitution in order to preserve error. Rather, the Court explained that a defendant should object about restitution to the trial court in order to give the trial court "the opportunity to reconsider the condition of probation or to reconsider the appropriateness of the probation contract without the objected-to condition." *Id.*, at 24 (citation omitted).

In this case, Appellant did "object" that the amount of restitution imposed by the trial court was not supported by a factual basis within the record when he complained in his Motion for New Trial that "there was no legally or factually sufficient evidence that Defendant committed fraud in the amount as alleged in the indictment and as found by the jury." [CR 172] The trial court was, therefore, presented with the opportunity to reconsider the condition or appropriateness of the amount of restitution imposed on Appellant, including whether – as required by due process -- the amount of restitution imposed was just and supported by a factual basis within the record. *Campbell*, 5 S.W.3d at 697.

No talismanic words are needed to preserve error as long as the court can understand what the complaint is from the context. *Clark v. State*, 365 S.W.3d 333, 337 (Tex. 2012). *See also Bedolla v. State*, 442 S.W.3d 313, 316 (Tex. Crim. App. 2014). The Texas Court of Criminal Appeals has stated that strict reliance on particular phrases when making objections at trial are a thing of the past:

> To be sure, there are reported cases which seem to take a more slavish and unforgiving approach, but these have dwindled in importance as they have in frequency. Contemporary examples are now few and far between, and it is **our purpose that they become even less common in the future.**

*Lankston v. State*, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992) (emphasis added).

More recently, the Court of Criminal Appeals has stated that "magic words" are not required to preserve error, and a complaint will be preserved if the substance of the complaint is conveyed to the trial judge. *Bennett v. State*, 235 S.W.3d 241, 243 (Tex. Crim. App. 2007).

Appellant clearly objected, in his Motion for New Trial/Arrest of Judgment, that there was no factual support in the record for a finding of fraud in the amount found by the jury, which necessarily included a complaint about the amount of restitution imposed by the trial court. To hold otherwise, would require a slavish and unforgiving approach to preservation of a complaint about restitution. *Lankston v. State*, 827 S.W.2d at 909.

As a result, Appellant properly preserved his objection to the amount of restitution, and this Court of Appeals should, after rehearing, reverse its judgment and reverse the judgment on the grounds that no legally sufficient evidence supports the amount of restitution imposed and either render a judgment that no amount of restitution should be imposed or, in the alternative, remand this issue to the trial court for a new trial on the amount of restitution, if any, to be imposed on Appellant.

## III.

## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Appellant Howard Douglas, respectfully moves this Third Court of Appeals to grant Appellant's Motion for Rehearing or Motion for Rehearing *En Banc* and, after rehearing, reverse the trial court's judgment against Appellant and enter a verdict of not guilty in his favor or, in the alternative, reverse the imposition of restitution on Appellant and either enter a judgment that no restitution should be imposed or remand this matter to the trial court for a new trial on whether restitution should be imposed and, if so, in what amount.

Respectfully submitted,
/s/ Craig M. Price
Craig M. Price
State Bar No. 16284170
Email: cmp@hammerle.com
HAMMERLE FINLEY LAW FIRM
2871 Lake Vista Dr., Suite 150
Lewisville, Texas 75067
Tel: (972) 436-9300
Fax: (972) 436-9000
Attorney for Appellant

## CERTIFICATE OF SERVICE

This is to certify that on September 10, 2015, a true and correct copy of the above and foregoing document was served on the Travis County District Attorney's Office, Travis County, PO Box 1748, Austin, Texas 78767, by facsimile 512-854-9789.

Craig M. Price

## CERTIFICATE OF COMPLIANCE

The undersigned counsel hereby certifies, pursuant to Tex. R. App. 9.4(i)(4), that the foregoing Motion for Rehearing, et al., contains a total of 2,534 words.

Craig M. Price